UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ADRIAN ALAN ARRIOLA<br>*Plaintiff,* | § § § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| 3M COMPANY<br>*Defendant.* | § § § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Adrian Alan Arriola, ("Plaintiff") files this, his Original Complaint, complaining of Defendant 3M Company, and in support thereof would respectfully show the Court the following:

### I.
### PARTIES

1. Plaintiff Adrian Alan Arriola is an individual residing in the State of Texas.

2. Defendant 3M Company is an entity with its principal place of business located at 3M Center, Bldg. 224-5N-40, St. Paul, Minnesota 55144. Defendant 3M Company is registered to transact business in Texas and may be served with process on its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

### II.
### JURISDICTION AND VENUE

3. The Court has jurisdiction over Defendant 3M Company, because it is doing business in Texas.

4.  This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy is greater than $75,000.00.

## III.
## FACTS

5.  Plaintiff, Adrian Arriola, is an Army combat medic veteran. Throughout his military service, Plaintiff was stationed at Fort Riley, Kansas and deployed overseas in Iraq and Afghanistan for four (4) one (1) year tour of duty.

6.  While serving at Fort Riley, Afghanistan and Iraq, Plaintiff was issued dual-ended Combat Arms earplugs, designed, manufactured, marketed and sold by Defendant 3M Company. As a result of using these defective earplugs during combat and training, Mr. Ariola suffered hearing damage and continues to suffer daily from tinnitus, hearing loss, and other damages.

7.  In July 2018, Defendant 3M agreed to pay $9.1 million to resolve allegations that it supplied the United States with defective dual-ended Combat Arms earplugs. *See United States of America ex. Rel. Moldex-Metric, Inc. v. 3M Company;* In the United States District Court for the District of South Carolina, Columbia Division; Case No. 3:16-1533-MBS. In that case, the United States alleged that 3M, and its predecessor, Aearo Technologies, Inc., knew the dual-ended Combat Arms earplugs were too short for proper insertion into users' ears and that the earplugs could loosen imperceptibly and therefore did not perform well for certain individuals. The United States further alleged that 3M did not disclose this design defect to the military.

8.  Defendant 3M's dual-ended Combat Arms earplugs. That were designed to provide soldiers with a single set of earplugs that offer them two options for hearing attenuation depending upon how the plugs are worn. If worn in the "closed" or "blocked" position, the earplugs are supposed to block sound like traditional earplugs. If worn in the "open" or "unblocked" position,

the earplugs are supposed to block, or at least significantly reduce, loud impulse sounds of battlefield explosions, while still allowing the wearer to hear quieter noises such as commands spoken by fellow soldiers and approaching enemy combatants. These earplugs were originally created by a company called Aero Technologies ("Aearo"). 3M acquired Aearo in 2008 (and thus any liability associated with its past conduct) and hired the employees at Aearo that developed and tested the defective earplugs. These 3M employees were aware of the defects as early as 2000, several years before 3M/Aearo became the exclusive provider of the earplugs to the military.

9. As known to 3M/Aearo at the time it received the exclusive contract to supply earplugs to the military between 2003 and 2012, these earplugs have dangerous defects that can cause them to loosen in the wearer's ear. This defect was imperceptible to the wearer and even trained audiologists visually observing a wearer, thereby permitting damaging sounds to enter the ear canal. Because the stem of the dual-ended earplug is too short, it is difficult to insert the plug deeply into some wearer's ear canals and obtain a proper fit. Specifically, when the earplug is inserted into the ear according to standard fitting instructions, the basal edge of the third flange of the non-inserted end of the earplug is prone to press against some wearer's ear canals and fold back to its original shape, thereby loosening the seal in their ear canals. The defect has the same effect when either end is inserted because the earplugs are symmetrical. In either scenario, the effect is that the earplug may not maintain a tight seal in some wearers' ear canals such that dangerous sounds can bypass the plug altogether thereby posing serious risk to the wearer's hearing unbeknownst to him or her.

10. These dangerous design defects were known to Aearo in 2000 (and later 3M) when it completed testing of the dual-ended Combat Arms earplugs.

11. Despite this knowledge, in 2003, Aearo submitted a bid in response to the military's Request for Proposal to supply large quantities of these defective earplugs and entered into a contract pursuant to which it became the exclusive supplier of earplugs to the military.

12. When Defendant Aearo/3M Company initially tested the dual-ended Combat Arms earplugs before becoming the exclusive supplier of military earplugs, the test subjects were instructed to manipulate the earplugs due to the short stem so that it would achieve a satisfactory noise reduction rating. However, these same instructions to manipulate the dual-ended Combat Arms earplugs in this manner were not given to end users of the earplugs. Because of this, Plaintiff and other users of the dual-ended Combat Arms earplugs only used the earplugs according to the instructions provided by Defendant 3M Company, which did not instruct them to manipulate the earplugs to achieve a proper fit. As a result of not being properly warned or instructed as to how to wear the dual-ended Combat Arms earplugs, Plaintiff suffered damages.

13. Further, the dual-ended Combat Arms earplugs manufactured by Defendant 3M Company deviated from the specifications promulgated by the U.S. Military, the American National Standards Institute, and the Environmental Protection Agency in a manner that rendered them unreasonably dangerous. Specifically, the U.S. Military's request for proposal issued to Defendant 3M Company requires that "the earplugs shall be free from all defects that detract from their appearance or impair their serviceability." The dual-ended Combat Arms earplugs, as manufactured, deviated from this specification in that, when they left control of Defendant, the dual-ended Combat Arms earplugs were difficult for users to insert the plug deeply into their ear canals and obtain a proper fit. The defective manufactured of the dual-ended Combat Arms earplugs and their failure to conform with the required specifications directly and proximately caused Plaintiff's injuries.

## IV.
## CLAIMS AGAINST DEFENDANT 3M COMPANY

### A. PRODUCTS LIABILITY – DESIGN DEFECT

14. The dual-ended Combat Arms earplugs at issue were originally designed, manufactured, and sold by Defendant 3M Company. At the time the dual-ended Combat Arms earplugs in question were sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing dual-ended Combat Arms earplugs, such as the ones in question, in the stream of commerce.

15. At the time the dual-ended Combat Arms earplugs in question were designed, manufactured and sold by Defendant, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the dual-ended Combat Arms earplugs in question were a direct and proximate cause of the injuries to Plaintiff.

16. The dual-ended Combat Arms earplugs reached Plaintiff in the condition expected and intended by Defendant.

17. Plaintiff used the dual-ended Combat Arms earplugs for their intended and foreseeable purpose.

18. The defects regarding the dual-ended Combat Arms earplugs include but are not limited to the stem of the dual-ended earplug being too short, so that it is difficult for users to insert the plug deeply into their ear canals and obtain a proper fit.

19. Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the utility of the dual-ended Combat Arms earplugs.

20. The dual-ended Combat Arms earplugs were defectively designed because the stem of the dual-ended earplugs was too short, so that it is difficult for users to insert the plug deeply into their ear canals and obtain a proper fit. The inability to obtain a proper fit while using the dual-ended Combat Arms earplugs caused Plaintiff's injuries. Specifically, Defendant could designed the dual-ended Combat Arms earplugs with a longer stem so that it would allow users to insert the plug deeper into their ear canals and obtain a proper fit.

21. Each alternative design for the above identified defects was available in the market and was technologically and economically feasible at the time the dual-ended Combat Arms earplugs were manufactured and would not have impaired the utility of the dual-ended Combat Arms earplugs.

22. Further, at the time the dual-ended Combat Arms earplugs in question were sold, the defective design caused the product to unexpectedly fail to function in a manner reasonably expected by an ordinary consumer. The defective and unreasonably dangerous design of the dual-ended Combat Arms earplugs were a producing cause of Plaintiff's injuries.

23. At the time of the incident made the basis of this lawsuit, the dual-ended Combat Arms earplugs were in the same or substantially similar condition as they were at the time they left Defendant's control and were placed into the stream of commerce. Any alterations to the dual-ended Combat Arms earplugs were made by a dealer and/or agent of Defendant.

### B. PRODUCTS LIABILITY – MANUFACTURING DEFECT

24. The dual-ended Combat Arms earplugs at issue were originally designed, manufactured, and sold by Defendant. At the time the dual-ended Combat Arms earplugs in question were sold, Defendant was in the business of designing, manufacturing, selling, and/or

otherwise placing dual-ended Combat Arms earplugs, such as the ones in question, in the stream of commerce.

25. The dual-ended Combat Arms earplugs reached Plaintiff in the condition expected and intended by Defendant.

26. Plaintiff used the dual-ended Combat Arms earplugs for their intended and foreseeable purpose.

27. When they left control of Defendant, defects in the manufacture of the dual-ended Combat Arms earplugs rendered them defective and unreasonably dangerous in that the dual-ended Combat Arms earplugs were difficult for users to insert the plug deeply into their ear canals and obtain a proper fit. In particular, the stem of the dual-ended Combat Arms earplugs was too short, so that it is difficult for users to insert the plug deeply into their ear canals and obtain a proper fit. The defective manufacture of the dual-ended Combat Arms earplugs directly and proximately caused Plaintiff's injuries.

### C. PRODUCTS LIABILITY – MARKETING DEFECT/FAILURE TO WARN

28. Defendant failed to give adequate and proper warnings and instructions regarding the dangers of the dual-ended Combat Arms earplugs which rendered the product defective and unreasonably dangerous and was a producing cause of Plaintiff's injuries and damages. Specifically, Defendant failed to warn potential and actual users of the dangers and risk of the defects. Further, Defendant failed to provide adequate instructions to users regarding proper use of the dual-ended Combat Arms earplugs. Defendant's failure to warn was a proximate cause of Plaintiff's injuries and damages.

### D. STRICT LIABILITY

29. The dual-ended Combat Arms earplugs that injured Plaintiff were originally designed, manufactured, and sold by Defendant. At the time the dual-ended Combat Arms earplugs in question were sold, Defendant was in the business of designing, manufacturing, testing, assembling, monitoring, selling and/or otherwise placing dual-ended Combat Arms earplugs, including the dual-ended Combat Arms earplugs at issue and their defective condition, which was the proximate cause of Plaintiff's injuries.

30. The dual-ended Combat Arms earplugs reached Plaintiff in the condition expected and intended by Defendant.

31. Plaintiff used the dual-ended Combat Arms earplugs for their intended and foreseeable purpose.

32. Due to the design and manufacture of the dual-ended Combat Arms earplugs, the dual-ended Combat Arms earplugs were not reasonably effective at reducing noise. The failure to appropriately design and manufacture the dual-ended Combat Arms earplugs which contributed to the ineffectiveness of the dual-ended Combat Arms earplugs in reducing noise was the direct and proximate cause of Plaintiff's injuries. Accordingly, Defendant should be held strictly liable.

33. Defendant placed the defective dual-ended Combat Arms earplugs into the stream of commerce and expected or could reasonably foresee the use of said dual-ended Combat Arms earplugs by individuals, such as Plaintiff, in the condition in which the dual-ended Combat Arms earplugs were designed, manufactured and sold.

34. The dual-ended Combat Arms earplugs at issue were designed, manufactured and assembled so that the defective condition was undiscoverable at the time of use of the dual-ended Combat Arms earplugs.

35. The defective condition of the subject dual-ended Combat Arms earplugs was not observable by Plaintiff who relied upon Defendant to design, test, manufacture, sell and deliver the subject dual-ended Combat Arms earplugs in a condition fit for use for the purposes intended.

36. As a direct and proximate result of the failure of Defendant to properly design, test, manufacture, sell and deliver the dual-ended Combat Arms earplugs at issue, Plaintiff has suffered severe personal injuries.

### E. NEGLIGENCE

37. Defendant committed acts of omission and commission, which collectively and severally constituted negligence, and that negligence proximately caused Plaintiff's injuries.

38. Defendant's acts or omissions constituting negligence include:

   a. Failing to properly design the dual-ended Combat Arms earplugs;

   b. Failing to properly manufacture the dual-ended Combat Arms earplugs;

   c. Failing to adequately test the dual-ended Combat Arms earplugs;

   d. Failing to adequately market the dual-ended Combat Arms earplugs;

   e. Failing to adequately instruct users in using the dual-ended Combat Arms earplugs;

   f. Failing to recall the dual-ended Combat Arms earplugs or, alternatively, to warn consumers of a known danger/defect in the dual-ended Combat Arms earplugs;

   g. Failing to disclose post-sale information known about dangers or defects in the dual-ended Combat Arms earplugs;

   h. Concealing known dangers associated with the dual-ended Combat Arms earplugs; and,

   i. Failing to meet or exceed internal corporate guidelines.

### F. GROSS NEGLIGENCE.

39. Plaintiff makes a claim for punitive damages pursuant to the Texas Constitution; therefore, Plaintiff will not be prohibited from introducing evidence of actual damages. Plaintiff seeks punitive damages for the gross negligence and/or malicious conduct of Defendant which was a proximate cause of the failure of the dual-ended Combat Arms earplugs and of Plaintiff's injuries and damages.

40. Specifically, Defendant's conduct, when viewed objectively from Defendant's standpoint at the time it occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

41. Furthermore, Defendant had actual, subjective awareness of the risk(s) but proceeded with a conscious indifference to the rights, safety or welfare of others.

### G. EXEMPLARY DAMAGES

42. Because Defendant is liable for gross negligence, punitive damages should be assessed against it as a deterrent to such future bad conduct and as a punishment for its bad acts in an amount to be determined by the jury.

## V.
## THE GOVERNMENT CONTRACTOR DEFENSE IS NOT APPLICABLE

43. The Federal Court have held that "liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Bynum v. FMC Corp.*, 770 F.2d 556 (5th Cir. 1985) (citing *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988)).

44. Further held that "the government contractor defense does not necessarily apply only to claims labeled "design defect.' Whether the government contractor defense applies to a particular claim depends only upon whether *Boyle's* three conditions are met with respect to the particular product feature upon which the claim is based." *Bailey v. McDonnell Douglas Corp.,* 989 F.2d 794 at 801-02 (5th Cir. 1993).

45. Here, the government contractor defense is inapplicable because the feature of the product claimed by Plaintiff to be defective (the stem of the dual-ended Combat Arms earplugs that is too short to provide adequate noise reduction for users) was not manufactured, designed, marketed, or sold in accordance with reasonably precise specifications approved by the United States, therefore not allowing the equipment to conform to such specifications. Further, and most egregiously, instead of warning the United States about the dangers in the use of the equipment it knew about, 3M instead manipulated its testing and marketing so as to conceal such dangers from the United States and from servicemembers, such as Plaintiff, who would ultimately use the product.

46. Accordingly, Defendant 3M Company will be held liable under Minnesota law.

## VI.
## DAMAGES

47. Plaintiff as a result of the incident seeks compensation for the following damages:

    a. The amount of reasonably medical expenses necessarily incurred in the past, and those that will reasonably be incurred in the future;

    b. Past and future physical pain and suffering of Plaintiff;

    c. Past and future physical disfigurement suffered by Plaintiff;

    d. Past and future physical impairment suffered by Plaintiff;

    e. Past and future mental anguish of Plaintiff;

  f. Past loss of wages and loss of future earning capacity of Plaintiff;

  g. Cost of suit;

  h. Exemplary damages; and

  i. Any and all other damages in which Plaintiff may be justly entitled.

## VII.
## PRAYER

48. For the foregoing reasons, Plaintiff prays that the Defendant be cited to appear and answer herein. Upon final trial by a jury, which is hereby demanded, Plaintiff is entitled to have judgment against Defendant and requests that the Court award money damages as listed above, in such amounts that the jury may deem appropriate and are allowable, by law, along with any and all other relief the Court may deem appropriate.

Respectfully submitted,

**HERRMAN & HERRMAN, PLLC**
The Herrman Building
1201 Third Street
Corpus Christi, Texas 78401
361/882-4357 - Telephone
361/883-7957 – Facsimile

By: ____/S/Josh W. Hopkins_____
Josh W. Hopkins
State Bar No. 00787714
Federal Bar No. 17618

E-Service Email: litigation@herrmanandherrman.com